UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JOSEPH J MANLEY,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 2:20-CV-32 JD

## OPINION AND ORDER

Plaintiff Joseph Manley applied for social security disability insurance benefits and supplemental security income, alleging that he is unable to work because he is disabled. An ALJ found Mr. Manley not disabled. Mr. Manley filed a complaint asking the Court to reverse the finding and remand for further proceedings based on several alleged errors with the ALJ's decision. The matter is fully briefed and ripe for decision. [DE 17, 20, 23]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I.  FACTUAL BACKGROUND

Mr. Manley filed for child's insurance benefits on July 27, 2016 and supplemental security income on July 19, 2016, alleging disability since birth—July 27, 1990. Mr. Manley alleged disability because of mental disability and ADD. (R. 98, 109, 123, 134). In elementary school, Mr. Manley had an Individualized Education Plan ("IEP") and he eventually became eligible for special education services under the category of mild mental retardation. (R. 286, 291–94). A school psychologist's evaluation found that Mr. Manley functioned in the mild impairment range of cognitive ability (R. 305, 322, 332) and testing of educational achievement showed that Mr. Manley was "around the second grade level overall" (R. 307, 324, 334). In high

school, his scores on cognitive testing fell in the mildly delayed range and he received a certificate of completion rather than a high school diploma. (R. 344).

In February 2009, Mr. Manley underwent a psychological evaluation with Dr. Raymond Bucur. (R. 466–69). Dr. Bucur's assessment was that Mr. Manley functions at the high end of the borderline range of intellectual functioning, reads and does math at the third-grade level, spells at a second-grade level, and has difficulty controlling his temper (R. 466, 468–69). Dr. Bucur opined that Mr. Manley would have difficulty filling out job applications, doing any kind of reading or math on the job, and his learning disability would impair him to handle a wide variety of jobs. (R. 469). In October 2016, Dr. Kathryn Huls performed a consultative psychological examination. (R. 653–57). Dr. Huls provisionally diagnosed Mr. Manley with mild intellectual disability. (R. 657). She also opined that Mr. Manley's ability to learn, remember, and comprehend simple instructions and to attend, concentrate, and complete simple tasks appeared mildly impaired. *Id.* She concluded he is likely to have a fair ability to interact with coworkers, supervisors, and the public in typical work settings and an adequate ability to handle routine changes within the workplace. *Id.*

In December 2016, Mr. Manley underwent a neuropsychological evaluation with Dr. Judith DeGrazia Harrington. (R. 659–75). She conducted a clinical interview and administered a number of tests. (R. 659). Dr. DeGrazia Harrington observed that Mr. Manley was extremely concrete in his thinking; it was hard for him to understand and follow directions; was very anxious; insight, awareness, and judgment were lacking; and his attention and concentration were low to average for his age. (R. 661–62). The standardized intelligence testing resulted in a full-scale IQ of 68 in the extremely low range. (R. 662–64). The results of an autism rating scale test resulted in the likely presence of autism spectrum disorder, with persistent deficits in social

2

communication and social interaction, excessive resistance to change, overreaction to trivial changes, rigid thinking, and a narrow range of interests. (R. 668).

Mr. Manley underwent therapy and medication management treatment between December 2010 and March 2018. (R. 472–652, 676–96, 699–739). During this time, Mr. Manley worked on, among other things, controlling his anger and impulse, improving his mood, attention, and concentration, seeking employment, and familial relationships. In April 2018, Dr. Robert Coyle performed an examination on Mr. Manley. (R. 740–44). Dr. Coyle administered several tests and diagnosed Mr. Manley with atypical autism spectrum disorder, mild to moderate mental retardation, and bipolar affective disorder. (R. 743). Dr. Coyle also concluded that his autism is within the moderate-to severe range; he functioned within the mildly mentally retarded range of general intelligence with adaptive behavior markedly weaker than it should be for his age; his reading skills scores indicated he is functionally illiterate; he has a "marked" impairment in his daily living skills and social functioning; a "moderate" impairment in concentration, pace, and persistence; and he "would be expected to decompensate on any competitive job within the first hours of day one because of his developmental disabilities with limited social, emotional, cognitive, and adaptive functions." *Id.*

At the hearing in front of the ALJ, Mr. Manley, his mother, and a vocational expert ("VE") testified. After the hearing, the ALJ issued an unfavorable decision on November 26, 2018. (R. 15–29). The ALJ found that Mr. Manley retained the RFC to perform work at all exertional levels but could understand and remember simple instructions; could carry out simple, routine tasks involving simple work-related decisions and judgment in two hour segments; could tolerate occasional changes in a routine work setting; could not work in a production pace rate environment; could tolerate no interaction with the public and occasional interaction with

coworkers; and could perform jobs that required a reasoning level of one or two, that did not require math, and that were learned through demonstration. (R 21). In the decision, the ALJ afforded the state agency psychological consultants' medical opinions great weight and Dr. Coyle's opinion little weight. (R. 25–26).

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the

claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged

by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### IV. DISCUSSION

Mr. Manley asserts three arguments in support of remand: 1) the ALJ erred in assessing his RFC by relying on the state agency psychological consultants' medical opinions that were formulated without the review of all relevant evidence and by failing to address VE testimony; 2) the ALJ erred in weighing medical opinion evidence; and 3) the ALJ erred in assessing his subjective allegations that addressed the intensity, persistence, and limiting effects of his symptoms. The Court addresses the second argument only, as the Court agrees that the ALJ erred in weighing medical evidence, therefore requiring remand. The Court need not address the remaining arguments, which can be addressed by the parties on remand.

Mr. Manley argues that the ALJ erred in affording examining psychologist Dr. Coyle's medical opinion little weight. (R. 26). Dr. Coyle diagnosed Mr. Manley with atypical autism spectrum disorder, mild to moderate mental retardation, and bipolar affective disorder. (R. 743). Dr. Coyle concluded that his autism is within the moderate to severe range. *Id.* Dr. Coyle further

6

opined that Mr. Manley functioned within the mildly mentally retarded range of general intelligence with adaptive behavior markedly weaker than it should be for his age and his reading skills scores indicated he is functionally illiterate. *Id.* Dr. Coyle concluded that Mr. Manley had a "marked" impairment in both his daily living skills and in his social functioning as well as a "moderate" impairment in concentration, pace, and persistence. *Id.* Dr. Coyle also opined that Mr. Manley "would be expected to decompensate on any competitive job within the first hours of day one because of his developmental disabilities with limited social, emotional, cognitive, and adaptive functions." *Id.* In finding that Dr. Coyle's opinion merited little weight, the ALJ concluded that the opinion was inconsistent with record evidence that indicated Mr. Manley was calm, clean, and cooperative; maintained normal eye contact; and demonstrated normal behavior and affect and logical thought process during various medical appointments. (R. 26). The ALJ further found that Mr. Manley's ability to work part-time and to provide some care for his parent contradicted Dr. Coyle's opinion about activities of daily living and social functioning. *Id.*

If the RFC determination conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p. The regulations also state "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §404.1527(c). In evaluating any medical opinion, an ALJ must consider the examining relationship, treatment relationship, length of the treatment relationship, relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other relevant factors. *Id.* An ALJ's failure to weigh medical opinion evidence pursuant to these factors mandates remand. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). An ALJ must cite substantial evidence to reject an examining medical source's medical opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Here, the ALJ

only addressed one of these factors. The Commissioner argues that the ALJ was not required to explicitly mention every factor in 20 C.F.R. § 404.1527(c). However, as explained in detail below, not only did the ALJ fail to discuss all the factors, but he also failed to support the one factor discussed with substantial evidence and the Court finds the ALJ's discussion inadequate. This error requires remand for further consideration.

While Dr. Coyle was not Mr. Manley's treating psychologist, he predicated his opinion on his own examination of Mr. Manley. (R. 740–44). As stated by the regulations, more weight is typically given to a medical opinion of a source who has examined the claimant than to the medical opinion of a non-examining medical source. 20 C.F.R. § 404.1527(c)(1). The ALJ here did not explain, given his examination of Mr. Manley, why Dr. Coyle's opinion was not afforded this presumption. The ALJ instead gave "great weight" to the state agency consultants' opinions, but these consultants did not examine Mr. Manley, and they did not review all of Mr. Manley's treatment records, specifically Drs. Coyle and DeGrazia Harrington's opinions. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (criticizing ALJ's reliance on consulting physicians' conclusions that were based on incomplete medical record); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (same)).

The ALJ must consider the extent of examination and testing the medical source has performed. 20 C.F.R. § 404.1527(c)(2)(ii); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (The checklist directs an ALJ to explain how he considers "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, *the types of tests performed*, and the consistency and supportability of the physician's opinion.") (emphasis added). As part of his examination, Dr. Coyle administered the Woodcock-Johnson Tests of Achievement-III, the Vineland Adaptive Behavior Scale, and the Child Autism Rating Scale. (R.

742). The Woodcock-Johnson Tests of Achievement established that Mr. Manley's reading comprehension and word recognition were at a second-to-third grade level and that Mr. Manley was functionally illiterate. *Id.* Mr. Manley's scores on the Vineland Adaptive Behavior Scale were indicative of "a high degree of dependency and childlike emotional and social development." *Id.* The Child Autism Rating Scale reflected that Mr. Manley suffered mild-to-moderate symptoms of autism. *Id.* Because Mr. Manley's score was a half point less than the severe symptoms range, Dr. Coyle concluded his autism was in the moderate to severe range and believed his diagnosis was missed in childhood. (R. 743). When summarizing Dr. Coyle's opinion, the ALJ referenced "diagnostic testing." (R. 25). However, in affording Dr. Coyle's opinion little weight, the ALJ did not discuss how these diagnostic tests factored into his conclusion. Additionally, Dr. Coyle did not formulate his medical opinion regarding Mr. Manley's impairments using only diagnostic testing, but he also interviewed Mr. Manley. This interview revealed that Mr. Manley did not know the current month or location of Dr. Coyle's office. (R. 741). The ALJ did not reference this favorable evidence nor did he explain why given that Dr. Coyle's opinion was supported by three psychological tests, an interview with Mr. Manley, and Dr. Coyle's own behavioral observations, Dr. Coyle's opinion did not merit greater than little evidentiary weight.

The ALJ also failed to discuss if or how he considered Dr. Coyle's specialization as a psychologist. A specialist physician's medical opinion merits greater weight than that of a non-specialist physician's opinion. 20 C.F.R. § 404.1527(c)(5). As a psychologist, Dr. Coyle received specialized education and training to "help people learn to cope with stressful situations, overcome addictions, manage their chronic illnesses, and tests and assessments that can help

9

diagnose a condition or tell more about the way a person thinks, feels, and behaves."[1] The ALJ did not explain if he considered Dr. Coyle's specialization or why he did not assign Dr. Coyle's opinion greater, rather than less, weight, given that Dr. Coyle specialized in treating the kinds of impairments from which Mr. Manley suffered, coupled with his thorough examination and diagnostic testing.

Not only did the ALJ fail to adequately discuss the required factors when weighing Dr. Coyle's opinion, but the brief rationale the ALJ did provide in his decision to give the opinion little weight is not supported by substantial evidence. While the Court recognizes that the ALJ need not discuss every piece of evidence in the record when rendering his decision, the ALJ must not "cherry-pick" evidence supporting a finding of non-disability while ignoring evidence that points to the contrary. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In concluding Dr. Coyle's opinion merited little weight, the ALJ "cherry-picked" evidence from the record that suggests Mr. Manley did not suffer significant mental health symptoms and ignored substantial evidence that was consistent with Dr. Coyle's opinion.

The ALJ found that Dr. Coyle's opinion is not consistent with the objective evidence showing that Mr. Manley is generally "calm, clean, and cooperative with normal behavior, fair eye contact, a normal affect, a logical thought process, and grossly intact cognition and concentration," citing generally to six exhibits in the record, including Dr. Coyle's opinion. (R. 26). However, as Mr. Manley detailed in his opening brief, the record reflects that he presented with affect that ranged from blunted to constricted to flat to labile (R. 495, 505, 513, 584, 627, 629–30, 632–33, 636, 695, 726-27), demonstrated limited fund of knowledge (R. 655), suffered poor motivation and feelings of being overwhelmed by basic tasks (R. 503, 513, 540, 568, 577,

---

[1] *What do practicing psychologists do?*, American Psychological Association, https://www.apa.org/topics/about-psychologists (Dec. 11, 2019).

583, 591, 701, 723, 735, 738), was easily irritated and made rash decisions (R. 480, 503, 513, 555, 591, 625, 654, 704), presented with impaired insight and judgment or concrete and impoverished thinking (R. 490, 513, 517, 531, 546, 557, 626, 662, 695), appeared disheveled or unkempt (R. 495, 505, 513, 695, 726–27), maintained poor eye contact with examiners (R. 495, 505, 513, 626, 656, 695), and struggled to maintain social relationships (R. 497, 503, 568, 626, 704). The more consistent a medical opinion is with other evidence, the greater weight that source's opinion merits. 20 C.F.R. § 404.1527(c)(4). However, the ALJ either ignored this evidence or failed to explain why he thought it was inconsistent with Dr. Coyle's opinion that Mr. Manley has marked restrictions in social interaction and daily living activities, moderate restrictions in concentration, persistence, or pace or would be expected to decompensate at any competitive job. (R. 744). Nor did the ALJ explain why observations that Mr. Manley maintained good eye contact during some examinations or that Mr. Manley attended to his personal hygiene were somehow more probative of his metal functional capacity than Dr. Coyle's observations and test results. *See Zurawski*, 245 F.3d at 888 ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight." (internal quotations and citations omitted)). Dr. Coyle's opinion notes that Mr. Manley was a "pleasant and cooperative individual" who wore "clean" clothes and was "adequately groomed" (R. 741), however as a specialist who performed three diagnostic tests, still opined that Mr. Manley had significant mental limitations.

The ALJ also did not discuss whether he considered the consistency between the examination of Mr. Manley by Dr. DeGrazia Harrington and Dr. Coyle. Dr. DeGrazia Harrington's mental status examination revealed that Mr. Manley demonstrated concrete

thinking; anxiety; difficulty following directions; low average attention and concentration; and absent insight, judgment, and awareness. (R. 662). The tests Dr. DeGrazia Harrington administered indicated that Mr. Manley scored in the extremely low range in the areas of logical memory, visual reproduction, immediate memory, delayed memory, and visual memory and his cognitive and perceptual reasoning abilities were extremely low. (R. 663–64). Dr. DeGrazia Harrington found that Mr. Manley demonstrated deficits in social communication and social interaction, in nonverbal communicative behaviors that were used for social interaction, in developing and maintaining relationships appropriate to developmental level, in adjusting behavior to suit social contexts, in making friends, and in demonstrating interest in others. (R. 668). Further, the autism-related testing Dr. DeGrazia Harrington gave Mr. Manley indicated that his autism caused him to very likely require substantial support. *Id*. The ALJ did not indicate whether he concluded Dr. Coyle's opinion was contradicted by or consistent with this other examining source's opinion. Further, the ALJ failed to assign any evidentiary weight to Dr. DeGrazia Harrington's opinion, which leaves the Court incapable of discerning how, if at all, the ALJ compared or considered her examination and conclusions based on the neuropsychological testing of Mr. Manley in relation to Dr. Coyle's opinion. An ALJ is required to explain how he considered all relevant evidence, including evidence that favors a finding of disability, and the ALJ failed to do that here. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018); *Yurt v. Colvin*, 758 F.3d 850, 859–60 (7th Cir. 2014). The ALJ further failed to provide a logical bridge from the evidence of the record, to the conclusion that Dr. Coyle's opinion merited little weight.

  The ALJ further states Dr. Coyle's opinion is inconsistent with Mr. Manley's "adaptive functioning or daily activities, including his ability to perform part-time work activity and provide some care for his parents." (R. 26). However, the ALJ failed to explain how Mr.

Manley's adaptive functioning suggests that he is more functionally capable than Dr. Coyle opined. The ALJ supported this conclusion with Mr. Manley's ability to perform part-time work. However, an ALJ may not rely on a claimant's ability to perform part-time work to conclude that a claimant can perform full-time work. *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("[T]here is a significant difference between being able to work a few hours a week and having the capacity to work full time"). Furthermore, the ALJ failed to discuss Mr. Manley's difficulty with his part-time work. The record evidence indicates that Mr. Manley struggled to show up to work (R. 591), he expressed that working more than a few hours a week would produce unmanageable stress (R. 40, 58, 723), he had trouble dealing with people he worked with (R. 41, 49), and only lasted a week in one position (R. 48). The ALJ also failed to mention that some of his part-time work activity was either for a family friend or a schoolteacher he has known since elementary school and he was able to take a lot of breaks. (R. 49–51, 59–60). In further support of Mr. Manley only being capable of part-time work is a treating source's conclusion that Mr. Manley could perform a low-skill job for no greater than 20 hours a week. (R. 695). A claimant who cannot perform full-time work is disabled (SSR 96-8p), and the ALJ failed to explain how this evidence, which supports that Mr. Manley could barely perform part-time work, let alone more than part-time work, suggested a greater vocational capability than Dr. Coyle found. The ALJ also supported his conclusion with Mr. Manley ability to provide some care for his parents. (R. 26). However, the ALJ failed to explain what type of care Mr. Manley performed for his parents and how this activity weighs greater than Dr. Coyle's conclusion that he had a "marked" impairment in his daily living skills and a "marked" impairment in his social functioning. Accordingly, because the ALJ failed to consider the factors required and failed to support the

13

little evidentiary weight afforded to Dr. Coyle's medical opinion with substantial evidence, remand for further consideration is required.

Finally, Mr. Manley requests the Court to consider entering an order finding him disabled and directing an award of disability benefits. [DE 17 at 14]. An award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355–56 (7th Cir. 2005). This is because a court does not have the authority to award disability benefits on grounds other than those established under 42 U.S.C. § 423. *Id.* at 356. Mr. Manley has not demonstrated that all factual issues have been resolved and the record supports a finding of disability. As the record is not so one-sided as to compel a finding of disability, Mr. Manley is not entitled to an outright award of benefits. Rather, remanding the matter for additional proceedings is appropriate.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: April 13, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court